UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LOSA M. LAFAELLE,                    )    CASE NO. C09-0496-JCC-MAT
                                     )
          Plaintiff,                 )
                                     )
     v.                              )    REPORT AND RECOMMENDATION
                                     )    RE: SOCIAL SECURITY DISABILITY
MICHAEL J. ASTRUE, Commissioner      )    APPEAL
of Social Security,                  )
                                     )
          Defendant.                 )
_____      )

     Plaintiff Losa M. LaFaelle proceeds through counsel in her appeal of a final decision of

the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an

Administrative Law Judge (ALJ).   Having considered the ALJ's decision, the administrative

record (AR), and all memoranda of record, the Court recommends that the ALJ's decision be

AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

     Plaintiff was born on XXXX, 1957.[1]   She graduated from high school and completed

_____

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of

01  two years of college.  (AR 64.)  Plaintiff worked as a customer service specialist for

02  Department of Social and Health Services (DSHS) for almost seventeen years.  (AR 107.)

03  She resigned from that position following a disagreement with her supervisor.  (AR 49-50,

04  67-68.)

05  Plaintiff filed an application for DIB in July 2006.  (AR 95-97.)  She alleged disability

06  beginning July 5, 2006 due to seizures, thyroid problems, and chronic depression. (AR 106.)

07  Her application was denied at the initial level and on reconsideration, and she timely requested

08  a hearing.

09  On May 21, 2008, ALJ Hayward C. Reed held a hearing, taking testimony from

10  plaintiff, medical expert Dr. Robert Klein, and vocational expert (VE) Daniel McKinney.  (AR

11  24-69.)  On July 24, 2008, the ALJ issued a decision finding plaintiff not disabled.  (AR

12  11-23.)

13  Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review

14  on February 27, 2009 (AR 1-4), making the ALJ's decision the final decision of the

15  Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

17  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

19  The Commissioner follows a five-step sequential evaluation process for determining

20  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

22  Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

01  must be determined whether the claimant is gainfully employed.   The ALJ found that plaintiff

02  did not engage in substantial gainful activity from her alleged onset date through her date last

03  insured, December 31, 2010.

04      At step two, it must be determined whether a claimant suffers from a severe impairment.

05  The ALJ noted that plaintiff's seizure disorder and mental impairments could be considered

06  nonsevere.   However, giving plaintiff the benefit of the doubt, the ALJ found her seizure

07  disorder, controlled on medication, depressive disorder, not otherwise specified, mild, and

08  anxiety disorder, not otherwise specified, severe.   He found plaintiff's migraines,

09  hypothyroidism, and hypertension not severe.

10      Step three asks whether a claimant's impairments meet or equal a listed impairment.

11  The ALJ concluded plaintiff did not have an impairment or combination of impairments that

12  met or medically equaled a listing.

13      If a claimant's impairments do not meet or equal a listing, the Commissioner must

14  assess residual functional capacity (RFC) and determine at step four whether the claimant has

15  demonstrated an inability to perform past relevant work.   The ALJ found plaintiff able to

16  perform work at all exertional levels, with the exception of seizure precautions.   He found that

17  she should avoid even moderate exposure to hazards, such as heights or dangerous machines,

18  and should not climb ladders, ropes, or scaffolds.   The ALJ further found mild limitations in

19  concentration, persistence, and pace and in interacting appropriately with coworkers and

20  supervisors.   With this RFC, the ALJ found plaintiff retained the functional capacity to

21  perform her past work as an administrative clerk, both as she performed it and as it is generally

22  performed.

01    If a claimant demonstrates an inability to perform past relevant work, the burden shifts

02 to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

03 an adjustment to work that exists in significant levels in the national economy.   Finding

04 plaintiff not disabled at step four, the ALJ did not proceed to step five.

05    This Court's review of the ALJ's decision is limited to whether the decision is in

06 accordance with the law and the findings supported by substantial evidence in the record as a

07 whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

08 more than a scintilla, but less than a preponderance; it means such relevant evidence as a

09 reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

10 F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

11 supports the ALJ's decision, the Court must uphold that decision.   *Thomas v. Barnhart*, 278

12 F.3d 947, 954 (9th Cir. 2002).

13    Plaintiff argues that the ALJ erred in assessing the opinions of examining physicians

14 and a mental health professional, in ignoring lay testimony, in assessing her testimony and her

15 RFC, and in reaching his decision at step four.   She requests remand for an award of benefits

16 or, in the alternative, a remand for further administrative proceedings before a different ALJ,

17 with the assistance of a vocational expert and medical experts.   The Commissioner argues that

18 the ALJ's decision is supported by substantial evidence and should be affirmed.   For the

19 reasons described below, the Court agrees with the Commissioner.

20                                   Medical Opinions

21    In evaluating the weight to be given to the opinions of medical providers, Social

22 Security regulations distinguish between "acceptable medical sources" and "other sources."

01  Acceptable medical sources include, for example, licensed physicians and psychologists, while

02  other non-specified medical providers are considered "other sources."  20 C.F.R. §§

03  404.1513(a) and (e), 416.913(a) and (e), and Social Securing Ruling (SSR) 06-03p.

04      In general, more weight should be given to the opinion of a treating physician than to a

05  non-treating physician, and more weight to the opinion of an examining physician than to a

06  non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not

07  contradicted by another physician, a treating or examining physician's opinion may be rejected

08  only for "'clear and convincing'" reasons.  *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

09  1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may

10  not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

11  the record for so doing."  *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

12  1983)).

13      The ALJ may reject physicians' opinions "by setting out a detailed and thorough

14  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

15  making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*,

16  881 F.2d at 751).   Rather than merely stating his conclusions, the ALJ "must set forth his own

17  interpretations and explain why they, rather that the doctors', are correct."  *Id*.   (citing *Embrey*

18  *v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

19      Less weight may be assigned to the opinions of other sources.  *Gomez v. Chater*, 74

20  F.3d 967, 970 (9th Cir. 1996).   However, "[s]ince there is a requirement to consider all relevant

21  evidence in an individual's case record," the ALJ's decision "should reflect the consideration of

22  opinions from medical sources who are not 'acceptable medical sources' and from

01 'non-medical sources' who have seen the claimant in their professional capacity."   SSR

02 06-03p.   "[T]he adjudicator generally should explain the weight given to opinions from these

03 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or

04 decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when

05 such opinions may have an effect on the outcome of the case." *Id. See also Smolen v. Chater*, 80

06 F.3d 1273, 1288-89 (9th Cir. 1996) (ALJ must provide germane reasons as to lay testimony).

07 A.    Dr. Joyce Everhart

08      Plaintiff asserts that the ALJ erred in his assessment of the opinions of consulting

09 physician Dr. Joyce Everhart.   Dr. Everhart examined plaintiff in September 2006 (AR

10 227-33) and, of note to plaintiff's argument, found her able to "complete one or two step tasks

11 of a repetitive nature[,]" that she "may have some difficulty with complex multi step tasks[,]"

12 and that she "has the ability to listen, understand, and follow simple directions."   (AR 233.)

13 Dr. Everhart also stated plaintiff "has some symptoms and impairment in occupational and

14 social realms."   (*Id.*)

15      Plaintiff argues that the ALJ necessarily rejected the above-described opinions of Dr.

16 Everhart by finding no mental limitations and her ability to perform at all exertional levels, with

17 the exception of seizure precautions and mild limitations in concentration, persistence, and

18 pace, as well as in interacting with coworkers and supervisors.   She adds that the limitation to

19 one or two step tasks of a repetitive nature is consistent with the findings of examining

20 physician Dr. James Czysz, who found mild limitations in her ability to understand, remember,

21 and follow simple (one or two step) instructions and marked limitations in her ability to

22 understand, remember, and follow complex (more than two step) instructions.   (AR 351.)

01  Likewise, Charles Herndon, a licensed independent clinical social worker, found marked

02  limitations with respect to complex instructions and moderate limitations with respect to simple

03  instructions.  (AR 364.)  Plaintiff maintains that, given the absence of any reasons for

04  rejecting Dr. Everhart's finding of a limitation to simple work, and the consistency of this

05  finding with those of other medical providers, this opinion must be credited as true.  *See*

06  *Lester*, 81 F.3d at 830-34 ("Where the Commissioner fails to provide adequate reasons for

07  rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a

08  matter of law.'"; finding that, if doctors' opinions and plaintiff's testimony were credited as

09  true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th

10  Cir. 1989)).

11       However, as argued by the Commissioner, plaintiff misreads Dr. Everhart's report.  Dr.

12  Everhart assessed plaintiff with a Global Assessment of Functioning (GAF) of 65, meaning she

13  had "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning

14  . . . , but generally functioning pretty well, has some meaningful interpersonal relationships."

15  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR).  As

16  noted by plaintiff, Dr. Everhart reflected that plaintiff had "some symptoms and impairment in

17  occupational and social realms."  (AR 233.)  She went on to find as follows:

18          Based on the mental status examination, her attention, concentration, and
            intellectual ability appear to be within normal limits.  Results of Trails A and
19          Trails B do not indicate difficulty with executive functioning.  She has the
            ability to complete one or two step tasks of a repetitive nature.  She may have
20          some difficulty with complex multi step tasks.  She has the ability to listen,
            understand, and follow simple directions.

21

22  (AR 233.)  Dr. Everhart earlier noted that plaintiff had not made any mistakes on Trails A or B.

01 (AR 231.)

02     Dr. Everhart's opinions are not reasonably interpreted as finding plaintiff limited to

03 performing one or two step tasks. Rather, Dr. Everhart found plaintiff's attention,

04 concentration, and intellectual abilities falling within normal limits, and stated only that

05 plaintiff can complete one or two step tasks and "may" have difficulty with complex, multi-step

06 tasks. (AR 233; emphasis added.) (*Id.*) The ALJ accurately reported Dr. Everhart's

07 findings and adopted his opinions, finding them consistent with the opinions of Dr. Klein and

08 the State agency consultants as to the existence of only mild limitations, as well as consistent

09 with the "longitudinal record[.]" (AR 22.) Also, it should be noted that the term "mild" as

10 used by Dr. Czysz is defined as reflecting "[n]o significant interference with basic work-related

11 activities." (AR 349, 362.) For these reasons, plaintiff fails to demonstrate error in the ALJ's

12 assessment of the opinions of Dr. Everhart.

13 B.    <u>Dr. W. Scott Mabee and Dennis Anderson</u>

14     The ALJ gave no weight to February 2007 opinions rendered by Dr. W. Scott Mabee

15 and Licensed Mental Health Counselor Dennis Anderson. (AR 339-48.) He stated:

16 > Despite a rule out malingering diagnosis and suspicions that her performance on
> the WMS-III was not accurate, Dr. Mabee and Mr. Anderson opined she had
17 > moderate and marked limitations in cognitive and social functioning, based
> solely on the claimant's reported cognitive deficits and her statement that she
18 > could not tolerate a work environment. As noted above, the claimant is not
> credible in her self-statements.

19

20 (AR 22.)

21     Plaintiff denies that Dr. Mabee and Anderson relied solely upon her subjective

22 complaints, pointing to the following from their report:

> Ms. Lafaelle presented with complaints of depression, concentration and memory problems. By report, she has had episodes of impulsivity and violence. She has been not been [sic] medicated for over 5 months with a reported diagnosis of seizures and hypothyroidism. Hypothyroidism is known to mimic symptoms of depression. Both seizure disorder and hypothyroidism can affect memory and concentration. Her lack of medical treatment for these disorders could likely exacerbate her symptoms.

(AR 348.) Also, while declining to complete the section on IQ and memory due to a lack of effort during cognitive testing (AR 339), Dr. Mabee and Anderson went on to find moderate and marked limitations in cognitive and social functioning (AR 341). Plaintiff asserts that Dr. Mabee would not have provided opinions in areas he thought were impacted by possible malingering, while declining other areas also impacted by possible malingering. *See Ratto v. Secretary, Dep't of Health & Human Servs.*, 839 F. Supp. 1415, 1426 (D. Or. 1993) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.") She avers that the ALJ's failure to provide at least specific and legitimate reasons for rejecting the opinions of Dr. Mabee and Anderson requires crediting them as true. *See Lester*, 81 F.3d at 830-34.

As argued by the Commissioner, plaintiff fails to establish error in the assessment of the opinions from Dr. Mabee and Anderson. On the first page of a form evaluation, in a section discussing IQ, Dr. Mabee and Anderson stated: "Because of effort during cognitive testing, it was not possible to determine her level of functioning. Education & work hx would predict average or above ability." (AR 339.) They included a possible diagnosis of malingering based on "TOMM, SIRS, and/or other formal measures of response effort[.]" (AR 340.) In a narrative report accompanying the form, Dr. Mabee and Anderson reflected that they did not have any medical records to review. (AR 345.) In discussing testing results, Dr. Mabee and

01  Anderson indicated plaintiff's performance in cognitive testing suggested she did not provide

02  good or full effort, raising a question of malingering, that, "[b]ased on her interview,"

03  borderline memory testing results were "not likely an accurate representation of her intellectual

04  abilities[,]" and that her MMPI-2 profile "was invalid due to a pattern of over reporting

05  symptoms." (AR 347.) They again opined as to possible malingering due to inadequate

06  effort in testing and over reporting and cited "her reported cognitive deficits," as her primary

07  barrier to employment, while noting that "she was able to tolerate about 3 hours of testing[,]"

08  but "stated she could not tolerate a work environment at this time." (AR 348.) The ALJ

09  summarized both the form and narrative report in his decision, including the discussion of

10  hyperthyroidism and seizure disorder highlighted by plaintiff. (AR 15-16.)

11      Considering the above, the ALJ reasonably found the assessment of moderate and

12  marked limitations in cognitive and social functioning as stemming from plaintiff's self-report.

13  The indication on the form that the assessed limitations were also based on "clinical

14  observation, and testing response style[]" is contradicted by the content of the narrative form

15  and of questionable reliability given the concern regarding malingering. Also, the discussion

16  of hyperthyroidism and seizure disorder is of limited help to plaintiff given that these medical

17  providers had no medical records to review in association with these or other impairments and,

18  therefore, could only note that such conditions are "*known* to mimic symptoms of

19  depression[,]" "*can* affect memory and concentration[,]" and that plaintiff's "lack of medical

20  treatment for these disorders *could* likely exacerbate her symptoms." (AR 348; emphasis

21  added.) They also immediately thereafter noted a possibility of malingering. (*Id.*) For all of

22  these reasons, the Court agrees with the Commissioner that the ALJ's decision is supported by

01  substantial evidence.

02  C.     Dr. James D. Czysz

03         The ALJ assessed the opinions of examining physician Dr. Czysz as follows:

04         Dr. Czysz opined she had moderate to marked limitations in cognitive and social
           functioning at Exhibit 18F, based on testing that showed Trailmaking tests well
05         below the 10th percentile, completely inconsistent with testing given by Dr.
           Everhart which showed Trailmaking tests within normal limits.   The opinion of
06         Dr. Czysz is based on the claimant's self statements, and is inconsistent with the
           bulk of the evidence presented here, and is accorded no weight.

07

08  (AR 22.)

09         Plaintiff first observes that the ALJ elsewhere in his decision inaccurately stated that Dr.

10  Klein testified that she "gave a malingered performance at Exhibit 18F [Dr. Czysz's

11  evaluation]."   (AR 22.)   As noted by plaintiff, Dr. Klein identified malingering in relation to

12  Dr. Mabee's evaluation, at Exhibit 17F.   (AR 30.)   Plaintiff maintains this error was not

13  harmless, asserting that the varying test results from Drs. Everhart and Czysz do not imply the

14  invalidity of opinions from either or both of these physicians absent a finding from the

15  interpreting physician.   She adds that the ALJ should not substitute his judgment for that of a

16  trained medical professional.   *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (". . .

17  ALJs must not succumb to the temptation to play doctor and make their own independent

18  medical findings.")

19         Plaintiff further argues that, because symptoms may vary over time, SSR 96-7p, and

20  mental impairments often wax and wane, *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir.

21  1006), the difference in testing results in the course of a year does not suffice to reject the later

22  test by Dr. Czysz.   She notes the Ninth Circuit Court of Appeals' recognition that:

"Consistency does not require similarity in findings over time despite a claimant's evolving medical status." *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007). Plaintiff also takes issue with the ALJ's conclusion that Dr. Czysz based his opinions on her statements, pointing to the indications that he relied on signs of depression, social withdrawal, agitation, and concentration difficulties. (AR 350-51.) *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.") Dr. Czysz additionally stated that testing did not indicate malingering, that she made good effort, that "[h]er poorly controlled seizures may be resulting in cognitive decline[,]" and that: "She has an excellent work history, but she appears to be suffering from both psychiatric and cognitive decline." (AR 351-52.) Again, plaintiff maintains that the opinions of Dr. Czysz should be credited as true. *See Lester*, 81 F.3d at 830-34.

As noted by plaintiff, Dr. Klein did not testify that Dr. Czysz's report reflected a malingered performance. Dr. Klein did testify, as accurately noted by the ALJ, that the disparity in results obtained by Drs. Everhart and Mabee supported possible malingering. (AR 30-31 (testifying, *inter alia*, that plaintiff's results on the MMPI for Dr. Mabee and Anderson were so extreme as to lead to the conclusion that plaintiff "was a paranoid schizophrenic with ongoing obsession compulsive rumination and so on and so forth . . .[,]" and that plaintiff "was wildly exaggerating her symptomology"; proposing secondary gain as a reason for the results).) However, for the reasons discussed below, plaintiff does not establish that the ALJ was required to obtain an opinion from Dr. Klein or another interpreting physician in order to reject the findings of Dr. Czysz.

01      As argued by the Commissioner, an ALJ appropriately considers disparity in testing

02 results. 20 C.F.R. Pt. 404, Subp't P, App. 1 §§ 12.00(D)(5)(c)(1)-(2) ("The salient

03 characteristics of a good [psychological] test [include]: (1) Validity, i.e., the test measures what

04 it is supposed to measure; [and] (2) reliability, i.e., the consistency of results obtained over time

05 with the same test and the same individual[.]") The citations relied on by plaintiff in objecting

06 to the ALJ's consideration of the inconsistent test results are distinguishable in that they relate

07 to varying symptoms, not varying test results. *See* SSR 96-7p (discussing a claimant's

08 statements about her symptoms) and *Andler*, 100 F.3d at 1392-93 (discussing "symptom-free

09 intervals" within the context of unsuccessful work attempts). *See also Orn*, 495 F.3d at 634

10 (discussing consistency as related to physicians' reports).

11      With the testing results called into question, the ALJ could reasonably infer reliance on

12 plaintiff's self-report. As noted by the Commissioner, the report does contain suggestions of a

13 reliance on plaintiff's report of her symptoms. (*See* AR 249 (noting plaintiff "*apparently*

14 began having seizures in about 2002[]" and "*reported* that she initially experienced a grand

15 mall seizure in May of 2002.") and AR 350 (stating with respect to diagnosed cognitive

16 disorder NOS: "(*reported* memory and concentration difficulty likely related to her seizure

17 disorder)"); emphasis added.)

18      The ALJ also found Dr. Czysz's opinions inconsistent with the bulk of the evidence. In

19 addition to the evidence of possible malingering found by Dr. Mabee and Anderson, Dr.

20 Czysz's opinions conflicted with the opinions of Dr. Everhart, Dr. Klein, and the State agency

21 consultants. Additionally, while Dr. Czysz twice posited that plaintiff's perceived cognitive

22 difficulties related to her seizure disorder (AR 350-51), plaintiff's treating neurologist found

01  plaintiff "stable with regard to her seizures" and considered "no further treatment"   (AR 22).

02      In sum, the ALJ provided specific and legitimate reasons for not according weight to the

03  opinions of Dr. Czysz.   Given the existence of other valid reasons for the ALJ's decision, the

04  error as it relates to the testimony of Dr. Klein can be deemed harmless.   *Carmickle v.*

05  *Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2002).

06  D.   Charles Herndon

07      Plaintiff also takes issue with the ALJ's rejection of the opinions of Charles Herndon, a

08  licensed independent clinical social worker:

09      New medical evidence at Exhibit 21F does not obviate the conclusions of
        medical expert Dr. Klein, based on his review of the entire record.   It is rejected
10      as it is not from an acceptable medical source, and objective evidence for the
        marked limitations in cognitive functioning is not discussed in any detail and not
11      consistent with the longitudinal record presented here.   It is also not consistent
        with the claimant's own testimony that she had a wide variety of duties at her
12      last job and no evidence that she was not performing well.

13  (AR 22.)

14      Plaintiff asserts that the rejection of Herndon's opinion because he is not an acceptable

15  medical source is contrary to law.   SSR 06-03p ("[D]epending on the particular facts in a case,

16  and after applying the factors for weighing opinion evidence, an opinion from a medical source

17  who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical

18  source,' including the medical opinion of a treating source.")   She notes Herndon's indication

19  that he based his findings of limitations on "[c]linical interview, PHQ9 results,

20  tangible-concrete   description of specific behaviors by pt – past 30 days[]"   (AR 364), as well

21  as the consistency of the limitations with those identified by Drs. Czysz and Mabee.

22      Plaintiff also asserts that the ALJ adopted the opinions of Dr. Klein without any

01 application of the factors required for weighing medical opinions, 20 C.F.R. § 404.1527, and

02 without an explanation as to why he believed Dr. Klein's opinions were persuasive and

03 supported by the evidence.    Plaintiff avers:   "The ALJ must do more than offer his

04 conclusions. He must set forth his own interpretations and explain why they, rather than the

05 doctors', are correct."   *Embrey*, 849 F.2d at 421-22.   She maintains that the ALJ erred in

06 adopting Dr. Klein's contrary opinions without specific and legitimate reasons and that the

07 opinions of Herndon should be credited as true.

08        The Commissioner notes that, because he is not an acceptable medical source,

09 information from Herndon "cannot establish the existence of a medically determinable

10 impairment[,] [i]nsead, there must be evidence from an 'acceptable medical source' for this

11 purpose."    SSR 06-3p.    He notes that, in this case, Herndon diagnosed plaintiff with chronic

12 post traumatic stress disorder and found a marked limitation in cognitive functioning,

13 specifically the ability to learn, remember, and follow complex (more than two step)

14 instructions.   (AR 363-64.)

15        The Commissioner asserts that the list of sources relied on by Herndon for his

16 assessment – including clinical interviews, responses to a personal health questionnaire (i.e.,

17 PHQ), and plaintiff's description of specific behaviors – demonstrates his reliance on plaintiff's

18 subjective reports, and does not constitute a discussion of his findings, as reported by the ALJ.

19 The Commissioner avers that, given the ALJ's decision to give no weight to the findings of Drs.

20 Mabee and Czysz – Herndon's findings lack the support of acceptable medical sources and

21 stand in contrast to the opinions accepted by the ALJ.

22        The Commissioner also asserts the ALJ's proper consideration of the opinions of Dr.

Klein, noting the observation that Dr. Klein is an impartial medical expert in psychology (AR 11, 18) and the conclusion that his opinions were consistent with the longitudinal record (AR 22). *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.") and (d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.") The Commissioner adds that the ALJ's summary of Dr. Klein's testimony (AR 18) arguably reveals his consideration of the supportability of Dr. Klein's findings, specifically the quality of his explanation for his opinion, the depth and breadth of his evaluation, his understanding of the disability process and its evidentiary requirements, and his familiarity with the case record. § 404.1527(d)(3), (d)(6).

To the extent the ALJ rejected Herndon's opinions merely because of his status as a non-acceptable medical source, this reasoning would be inappropriate. The ALJ must consider evidence from these sources and provide germane reasons for not according their opinions weight. SSR 06-03p; *Smolen*, 80 F.3d at 1288-89. As argued by the Commissioner, Herndon's diagnosis of post-traumatic stress disorder does not establish the existence of a medically determinable impairment given the lack of any supporting evidence from an acceptable medical source. SSR 06-3p. However, because it is not apparent that the ALJ's notation of Herndon's status as a non-acceptable source stemmed from this consideration, the Commissioner's suggestion is an improper post hoc rationalization. *See*, *e.g.*, *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (district court erred in affirming based on evidence the ALJ did not discuss).

In any event, the Court agrees with the Commissioner that the ALJ provided sufficient

01 reasons for rejecting Herndon's opinions. As found by the ALJ, Herndon did not provide a

02 detailed discussion of the findings of marked limitations in cognitive functioning and, as with

03 the findings of Dr. Czysz, those findings are not consistent with the longitudinal record in this

04 case. The ALJ also noted inconsistency with plaintiff's own testimony regarding her prior

05 employment. These reasons are germane to Herndon and any improper reliance on Herndon's

06 status as an "other source" can, therefore, be deemed harmless. *Carmickle*, 533 F.3d at

07 1162-63.

08     Finally, plaintiff fails to identify error in the consideration of Dr. Klein's testimony.

09 The ALJ described the testimony in detail, specifically pointed to Dr. Klein's opinion that

10 plaintiff had only mild limitations in pace and persistence and in social functioning, and

11 adopted Dr. Klein's and the State agency consultants' opinions as consistent with the

12 longitudinal record. (AR 18, 22.) For this reason, and for the reasons described above,

13 plaintiff fails to demonstrate any error in the consideration of the opinions of either Herndon or

14 Dr. Klein.

15                                   Lay Testimony

16     Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

17 to work is competent evidence. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

18 The ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each

19 witness. *See Smolen*, 80 F.3d at 1288-89 (finding rejection of testimony of family members

20 because, *inter alia*, they were "'understandably advocates, and biased'" amounted to

21 "wholesale dismissal of the testimony of all the witnesses as a group and therefore [did] not

22 qualify as a reason germane to each individual who testified.") (citing *Dodrill v. Shalala*, 12

01 F.3d 915, 918 (9th Cir. 1993)). *Accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)

02 ("[L]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take

03 into account, unless he or she expressly determines to disregard such testimony and gives

04 reasons germane to each witness for doing so.")

05     "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony

06 favorable to the claimant, a reviewing court cannot consider the error harmless unless it can

07 confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have

08 reached a different disability determination." *Stout v. Commissioner*, 454 F.3d 1050, 1056 (9th

09 Cir. 2006).   This standard applies where the ALJ "failed to provide any reasons for rejecting

10 the evidence at issue." *Carmickle*, 533 F.3d at 1162-63.

11     Plaintiff challenges the ALJ's failure to address two questionnaires in the record

12 completed by her niece.  (AR 125-38.)   She asserts that this failure was contrary to law and

13 that her niece's testimony should be credited as true.   The Commissioner concedes that the

14 ALJ did not address the lay testimony, but maintains this error was non-prejudicial since the lay

15 testimony lacked probative value and, even if credited as true, was markedly unfavorable to

16 plaintiff.    The Commissioner argues that the Court may confidently conclude that no

17 reasonable ALJ, even when fully crediting the lay testimony, could have reached a different

18 disability determination.   *Stout*, 453 F.3d at 1056.

19     Plaintiff's niece completed a "seizures questionnaire" in August 2006.  (AR 128-29.)

20 She indicated that, to her knowledge, plaintiff last experienced a seizure in November 2004 and

21 that, at that time, she took plaintiff to the hospital because plaintiff could feel a seizure coming

22 on.  (AR 128.)   Plaintiff's niece observed that plaintiff "seemed out of it and . . . was breathing

01 deep" and "very tired and kinda slow."  (AR 128-29.)  She otherwise stated "I don't know" in

02 response to questions given that she had never witnessed a "full blown seizure[.]"  (AR 129.)

03      In a third party report, also completed in August 2006, plaintiff's niece stated that she

04 had known plaintiff for three and a half years and that, although she lived with plaintiff, she did

05 not see her often because plaintiff "sleeps a lot." (AR 130.)   She stated that she could not attest

06 to how plaintiff had changed since her impairments began because she did not previously know

07 her, that plaintiff did not prepare her own meals, that plaintiff "just doesn't have the energy[]"

08 to do house or yard work other than laundry, that plaintiff was "not good with savings and

09 checking[]," and that plaintiff's impairments affected her abilities to lift, squat, bend, stand,

10 walk, sit, kneel, climb stairs, and use her hands because plaintiff "just seems very sluggish."

11 (AR 131-35.)   Plaintiff's niece indicated that plaintiff cared for her cat, had no problems with

12 personal care, needed no help or reminders to take medication, went outside once a day, drove

13 short distances, was able to pay bills and count change, watched "court TV[]" as a hobby, spent

14 time with "family some and phone[]" once or twice a day, did not need reminders to go places

15 or someone to accompany her, and had no problems getting along with family, friends,

16 neighbors, or others.  (AR 131-34.)  She also stated that plaintiff's ability to pay attention

17 "seems okay[,]" that plaintiff could finish what she started and could follow spoken instructions

18 "fine[,]" got along with authority figures "well[,]" had never been fired or laid off due to

19 problems getting along with others, that, with respect to changes in routine, plaintiff "just rolls

20 with the punches[,]" and that she had not noticed any unusual behavior or fears in plaintiff.

21 (AR 135-36.)   She again responded "I don't know" to a number of questions.  (*Id.*)

22      As argued by the Commissioner, the ALJ's failure to address the questionnaires from

01 plaintiff's niece can be deemed harmless.  Plaintiff's niece conceded she had never witnessed

02 an actual seizure and observed only that plaintiff seemed "out of it," very tired, and "kinda

03 slow" on one occasion in which plaintiff perceived a possible oncoming seizure in 2004.  (AR

04 128-29.)

05       The other report does contain some statements favorable to plaintiff's alleged

06 symptoms, including the observations that plaintiff slept a lot, lacked energy, and was limited in

07 various ways because she "just seems very sluggish."  (AR 130-34.)  This supports plaintiff's

08 testimony as to fatigue and drowsiness.  (AR 53-55.)  Yet, the report also contains statements

09 contradicting plaintiff's assertions as to her symptoms and how her impairments affect her

10 ability to work.  For instance, in contrast to the report, plaintiff testified that she had trouble

11 sleeping, slept only about four hours a night, and did not nap during the day.  (AR 55.)

12 Plaintiff also testified that, at the time of the hearing, she did house chores, prepared dinner, and

13 walked for exercise.  (AR 56.)  Plaintiff's niece denied observing any problems plaintiff

14 experienced in paying attention, following directions, or responding to changes, or any unusual

15 behaviors or fears.  (AR 134-36.)  She gave no indication that she was aware of other

16 symptoms attested to by plaintiff, such as nausea, anxiety, dizziness, headaches, aches and

17 pains, or joint pain.  (AR 52-55.)  Indeed, plaintiff's niece was unable to answer many

18 questions, conceding at the outset that she did not see very much of plaintiff and could not attest

19 as to how plaintiff might have changed since the onset of her impairments.  (AR 130-36.)

20       In sum, considering the reports from plaintiff's niece as a whole, it can be said that no

21 reasonable ALJ, fully crediting the lay testimony, could have reached a different disability

22 determination in this case.  For this reason, the Court finds the ALJ's failure to address the lay

01  testimony harmless.

02  <u>Credibility</u>

03      Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

04  reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

05  *See also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony

06  unreliable, an ALJ must render a credibility determination with sufficiently specific findings,

07  supported by substantial evidence.  "General findings are insufficient; rather, the ALJ must

08  identify what testimony is not credible and what evidence undermines the claimant's

09  complaints."  *Lester*, 81 F.3d at 834.  "We require the ALJ to build an accurate and logical

10  bridge from the evidence to her conclusions so that we may afford the claimant meaningful

11  review of the SSA's ultimate findings."  *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

12  "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

13  inconsistencies either in his testimony or between his testimony and his conduct, his daily

14  activities, his work record, and testimony from physicians and third parties concerning the

15  nature, severity, and effect of the symptoms of which he complains."  *Light v. Social Sec.

16  Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

17      In this case, the ALJ assessed plaintiff's credibility as follows:

18      After considering the evidence of record, the undersigned finds that the
        claimant's medically determinable impairments could reasonably be expected to
19      produce the alleged symptoms; however, the claimant's statements concerning
        the intensity, persistence and limiting effects of these symptoms are not credible
20      to the extent they are inconsistent with the residual functional capacity
        assessment.  The claimant has testified that she feels she is too emotionally
21      disabled to work, however, the medical expert at the hearing testified that the
        longitudinal record indicated her mental impairments cause only mild
22      limitations at the most, not indicative of a disabling mental impairment.

01    Indeed, she testified that she did not request any accommodation related to a
      disability, and acknowledges that the reason she left work was that she resigned
02    because her supervisor took action of checking on her whereabouts.   The
      undersigned finds several inconsistencies and contradictions in the evidence
03    overall and in the allegations made by the claimant.   Her reports of when her
      last seizure was has varied from record to record (compare her testimony to 6F,
04    7F, 11F, and 15F).   She told Dr. Hedge at 8F that she hated her job, but she told
      Dr. Everhart at 7F that she loved her job.   She denied any history of drug or
05    alcohol use to Dr. Hedge, however, she told Dr. Everhart she used many drugs as
      well as alcohol, but no use since April or May 2006.   At Exhibit 19F, she
06    reported no drinking since January 2006.   Dr. Anderson reported the need to
      taper down on the Lorazepam, however, the claimant managed to obtain a
07    prescription despite his strong recommendation.   Despite testimony of
      dizziness about twice a week, Exhibit 20F indicated she failed to show for
08    several appointments for cerebrovascular studies to determine the cause, later
      stating the dizziness was somewhat better and occurring less often.   She
09    testified to twice-daily headaches, however, this statement is not borne out in her
      statements to her doctors that she had migraines 3-4 times a week at most, and
10    the last mention of headaches was to Dr. Murphy in April 2007.

11   (AR 21-22.)   The ALJ also considered, as discussed above, evidence of possible malingering.

12   (AR 22.)

13        Plaintiff first avers that the ALJ in this case made no findings of malingering and that

14   the record did not support such a finding as only one consultative examiner found a possibility

15   of malingering.   She further argues that the ALJ failed to provide clear and convincing reasons

16   for his credibility finding.   Pointing to the notation as to inconsistencies in her reports of

17   seizures, plaintiff notes Dr. Mabee's statement that both the seizure disorder and

18   hypothyroidism can affect memory and concentration.   (AR 21, 348.)   She discounts the

19   observation as to how she expressed feeling about her prior job as both not unusual and

20   dependent upon occurrences at work.   Plaintiff criticizes the reliance on her failure to show for

21   cerebrovascular studies given that she also said she could not afford to see doctors (AR 33, 62).

22   *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("[A] disabled claimant cannot be

01 denied benefits for failing to obtain medical treatment that would ameliorate his condition if he

02 cannot afford that treatment.")  In regard to a change in her headaches, plaintiff again notes

03 that symptoms may vary over time, *see* SSR 96-7p, and points to an abnormal brain MRI

04 showing "fairly extensive" white matter changes (AR 283, 303-06), adding that the ALJ did not

05 explore the possibility that this could have contributed to, among other things, her vertigo and

06 headaches.

07   However, as argued by the Commissioner, plaintiff fails to establish error in the

08 credibility assessment. The ALJ appropriately contrasted plaintiff's assertion that she was too

09 emotionally disabled to work with the medical expert's testimony that the longitudinal record

10 showed only mild limitations stemming from plaintiff's mental impairments.  *Carmickle*, 533

11 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the

12 claimant's subjective testimony.") The ALJ also appropriately pointed to the fact that plaintiff

13 stopped working due to a dispute with her supervisor, rather than any disability.  *Bruton v.*

14 *Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (finding the fact that a claimant "left his job

15 because he was laid off, rather than because he was injured[]" a "specific, cogent" reason for

16 disregarding the claimant's testimony).[2]

17   While plaintiff takes issue with the import of various findings, the ALJ also

18    2 In response to arguments raised by the Commissioner, plaintiff asserts that her decision to

19 resign from her job, even though she was only two to three years from retirement, is arguably consistent
with a mental impairment given that her length of service and close proximity to retirement seems to

20 make her decision to resign illogical.   That is, plaintiff posits, why would she have resigned but for her
impairments? Yet, as argued by the Commissioner, plaintiff's own testimony supports the conclusion

21 that she left her job due to a conflict with her supervisor, rather than any medical impairment:   "I had
two or three more years to go.   And I was shooting for that until that fire [at my residence] happened.
The only thing I was so mad about was her coming to my residence.   I don't like that you know.   So

22 that was the main thing why I resigned.   She shouldn't do that."   (AR 67-68; *accord* AR 50; *see also*
AR 59 (plaintiff testified that she had never received an unsatisfactory performance evaluation).)

01   appropriately pointed to inconsistencies in the record, including varying reports of her last

02   seizure, comments about her prior job, statements about drug and alcohol use, and descriptions

03   of headaches/migraines.  *See generally Light*, 119 F.3d at 792.  *See also Verduzco v. Apfel*,

04   188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent statements regarding alcohol use may be

05   considered as a reason to reject a claimant's testimony).  Also, as related to her

06   headaches/migraines, the May 2007 MRI referred to by plaintiff did not show changes in

07   comparison to imaging conducted in 2004.  (AR 283 (". . . I do not think the abnormal MRI of

08   brain represents demyelinating disease.  Her MRI has not changed in the last three years."))

09        Finally, the ALJ also appropriately pointed to the fact that plaintiff obtained a

10   prescription for a medication contrary to a physician's recommendation and that she failed to

11   follow through with certain treatment.  *See* SSR 96-7p ("[T]he individual's statements may be

12   less credible . . . if the medical reports or records show that the individual is not following the

13   treatment as prescribed and there are no good reasons for this failure.") and *Orn*, 495 F.3d at

14   638 ("[A]n 'unexplained, or inadequately explained, failure to seek treatment' may be the basis

15   for an adverse credibility finding unless one of a 'number of good reasons for not doing so'

16   applies.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  With respect to the

17   latter point, it should be noted that plaintiff did not attribute her failure to show for

18   cerebrovascular studies to a lack of insurance or money, but, rather, was "shocked" to have

19   been told she missed the first appointment and acknowledged missing the second appointment,

20   stating, as noted by the ALJ, that "her dizziness is somewhat better, anyway, occurring less

21   often."  (AR 21, 356; *see also* AR 33, 62 (the testimony at the hearing regarding a failure to

22   follow through with treatment was of a general nature and did not relate specifically to

01 plaintiff's failure to show for cerebrovascular study appointments).)

02 In sum, the ALJ provided clear and convincing reasons for finding plaintiff less than

03 fully credible. The ALJ's credibility assessment should be upheld.

04 <u>Step Four</u>

05 At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

06 assess her work-related abilities on a function-by-function basis, including a narrative

07 discussion. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p. RFC is the most a claimant can

08 do considering his or her limitations or restrictions. *See* SSR 96-8p. The ALJ must consider

09 the limiting effects of all of plaintiff's impairments, including those that are not severe, in

10 determining RFC. §§ 404.1545(e), 416.945(e); SSR 96-8p.

11 Plaintiff bears the burden at step four of demonstrating that she can no longer perform

12 her past relevant work. 20 C.F.R. § 404.1512(a), 404.1520(f); *Barnhart v. Thomas*, 540 U.S.

13 20, 25 (2003). However, the ALJ retains a duty to make factual findings to support his

14 conclusion, including a determination of whether a claimant can perform the actual demands

15 and job duties of her past relevant work or the functional demands and job duties of the

16 occupation as generally performed in the national economy. *Pinto v. Massanari*, 249 F.3d

17 840, 844-45 (9th Cir. 2001) (citing SSR 82-61). "This requires specific findings as to the

18 claimant's residual functional capacity, the physical and mental demands of the past relevant

19 work, and the relation of the residual functional capacity to the past work." *Id*. (citing SSR 82

20 62). An ALJ may rely on two sources "to define a claimant's past relevant work as actually

21 performed: a properly completed vocational report, SSR 82-61, and the claimant's own

22 testimony, SSR 82-41." *Id*. at 845. The Dictionary of Occupational Titles (DOT) is generally

01  considered the best source for determining how past relevant work is generally performed.   *Id*.

02  at 845-46.   An ALJ need not render "explicit findings at step four regarding a claimant's past

03  relevant work both as generally performed and as actually performed."   *Id*. at 844-45.

04  Instead, he need only make a sufficient finding pursuant to the applicable regulations.   *Id*.

05      Plaintiff raises a number of arguments in relation to step four.   She challenges the RFC

06  assessment, the corresponding hypothetical to the VE, and the ALJ's reliance on the VE's

07  testimony.

08  A.      RFC Assessment

09      Plaintiff avers that, in assessing her RFC, the ALJ failed to consider all medical

10  opinions, including opinions from Drs. Mabee and Czysz, Herndon, and Dr. Everhart's alleged

11  preference as to simple, repetitive work.   She asserts that the ALJ failed to comply with SSR

12  96-8p, by failing to consider all of her impairments, including those deemed not severe.   She

13  maintains that the ALJ failed to address the fact that hypothyroidism and her seizure disorder

14  can impact memory and concentration, or her seizure auras, dizziness, and abnormal brain

15  MRI, including the possible impact on her vertigo and headaches.   Plaintiff also contends that

16  the ALJ impermissibly failed to consider the side-effects of her medications.   *Erickson v.*

17  *Shalala*, 9 F.3d 813, 818 (9th Cir. 1993) ("The ALJ must consider all factors that might have a

18  'significant impact on an individual's ability to work[,]'" including medication side effects)

19  (quoting *Varney v. Secretary of HHS*, 846 F.2d 581, 585 (9th Cir.), *relief modified*, 859 F.2d

20  1396 (1988)).

21      Plaintiff does not establish error in the ALJ's RFC assessment.   As discussed above,

22  the ALJ did not err in assessing the opinions from Herndon or Drs. Mabee, Czysz, and Everhart.

01  Plaintiff's reliance on evidence of hypothyroidism and her seizure disorder impacting memory

02  and concentration and her abnormal brain MRI is similarly unpersuasive for the reasons

03  discussed above.

04        Nor does plaintiff otherwise establish error in the ALJ's consideration of her

05  impairments.  As argued by the Commissioner, the ALJ's decision reflects his thorough

06  consideration of the medical evidence and plaintiff's various impairments.  (AR 14-22.)

07  Also, the RFC specifically accounted for many of plaintiff's concerns by including seizure

08  precautions, avoidance of even moderate exposure to hazards, such as heights or dangerous

09  machines, a prohibition on climbing ladders, ropes, or scaffolds, and a finding of mild

10  limitations in concentration, persistence, and pace.  (AR 20.)  Additionally, plaintiff does not

11  point to any specific medications or side effects in support of her final argument.  Accordingly,

12  for all of these reasons, the ALJ's RFC assessment withstands scrutiny.

13  B.    VE Testimony

14        A hypothetical posed to a VE must include all of the claimant's functional limitations

15  supported by the record.  *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562,

16  520-71 (9th Cir. 1995)).  A VE's testimony based on an incomplete hypothetical lacks

17  evidentiary value to support a finding that a claimant can perform jobs in the national economy.

18  *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d

19  841, 850 (9th Cir. 1991)).  Also, pursuant to SSR 00-4p, an ALJ has an affirmative

20  responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there

21  is a conflict, determine whether the VE's explanation for such a conflict is reasonable.

22  *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).

01      Plaintiff argues that, given the insufficiencies in the RFC as described above, the

02  hypothetical and findings based on that hypothetical are necessarily insufficient.   She asserts

03  that the ALJ failed to conduct a functional analysis of the mental and physical requirements of

04  her prior job, as required by SSRs 82-62 and 96-8p, and notes that the VE's written report stated

05  only that her past work was semi-skilled, with a Specific Vocational Preparation (SVP) of 4,

06  and required a "variety of tasks[,] making judgments[,] talking/hearing."  (AR 161.)   Finally,

07  plaintiff asserts that the ALJ failed to ask the VE if there was a conflict between his testimony

08  and the DOT, and incorrectly stated that the testimony was consistent with the DOT without

09  any corroborative evidence (AR 23).

10      Plaintiff's first argument lacks merit.   As discussed above, plaintiff fails to demonstrate

11  any error in the RFC assessment.

12      Nor does plaintiff establish error in the functional analysis of the requirements of her

13  past work.   As noted by the Commissioner, the VE's report also reflected plaintiff's prior job

14  title, the corresponding DOT code, the physical demand level of the job ("light") as described

15  by both the DOT and plaintiff, and the acquired skills ("office equipment processes[,] people

16  skills").  (AR 161.)   Also, plaintiff offered a detailed description of her job duties during the

17  hearing (AR 58) and the VE testified that he classified plaintiff's prior work considering

18  "source information assigned to Social Security regulations and having to do with the existence

19  of jobs and occupations in the national economy[,]" as well as "definitions in the Social

20  Security regulations having to do with the classification of jobs and occupations both as to skill

21  levels and exertional levels[.]"   (AR 63-64.)   Plaintiff does not establish that her past relevant

22  work required mental and physical abilities exceeding that in her RFC, which allowed work at

01 all exertional levels with seizure precautions, and only mild limitations in concentration,

02 persistence, and pace and in interactions with others.

03       As stated by plaintiff, the ALJ did not directly ask whether the VE's testimony was

04 consistent with the DOT. However, the testimony elicited by the ALJ supports the ALJ's

05 conclusion as to consistency. The ALJ asked the VE whether he was familiar with the

06 above-described "source information" and Social Security definitions as to skill and exertional

07 levels, and whether, using that source information and those definitions, he had classified

08 plaintiff's past work as to skill and exertional levels. (AR 63-64.) Referring to his report (AR

09 161), the VE responded that he had done so and agreed that plaintiff's past work and the job

10 classification were "identical[.]" (AR 64.) Responding to hypotheticals reflecting the

11 assessed RFC, the VE testified that plaintiff could perform her past relevant work. (AR

12 64-65.)

13       In any event, even assuming the above testimony does not reflect an opinion as to

14 consistency with the DOT, the failure to affirmatively inquire as to consistency can be deemed

15 harmless because plaintiff does not allege any actual conflict with the DOT. *See Rushing v.*

16 *Astrue*, No. 08-36001, 2009 U.S. App. LEXIS 28292 *4 (9th Cir. Dec. 23, 2009) (failure to ask

17 VE regarding consistency with the DOT harmless where plaintiff did not allege the VE's

18 testimony was actually inconsistent with the DOT) (citing *Massachi*, 486 F.3d at 1153-54 [n.

19 19] ("This procedural error could have been harmless, were there no conflict, or if the

20 vocational expert had provided sufficient support for her conclusion so as to justify any

21 potential conflicts[.] Instead, we have an apparent conflict with no basis for the vocational

22 expert's deviation.") (cited source omitted)). Nor does plaintiff in any other respect meet her

01 burden of demonstrating her inability to perform her past relevant work.   For this reason, and

02 for the reasons stated above, plaintiff fails to establish error at step four.

03 **<u>CONCLUSION</u>**

04       For the reasons set forth above, this matter should be AFFIRMED.   A proposed order

05 accompanies this Report and Recommendation.

06       DATED this <u>23rd</u> day of February, 2010.

07

08 _____

09 Mary Alice Theiler
United States Magistrate Judge